## McCarty v. Commonwealth.

(Decided October 15, 1926.)

Appeal from Magoffin Circuit Court.

1. Criminal Law—Absence of Witnesses Does Not Sustain Motion for Continuance where Moving Party Failed to Subpoena Them.— In prosecution for maliciously shooting and wounding a man who had appropriated defendant's property, held that defendant should have subpoenaed his witnesses in exercise of due diligence, and his failure to do so warranted refusal to grant continuance because of their absence.

2. Criminal Law.—In prosecution for maliciously shooting and wounding a man who had stolen defendant's saddle pockets containing whiskey, evidence of contents of saddle bags held admissible.

3. Criminal Law.—It was not duty of court to inform jury of the purpose for which evidence was admitted, where defendant did not so request.

HOWARD & ARNETT and D. G. SUBLETT for appellant.

FRANK E. DAUGHERTY, Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

McCarty shot and wounded Homer Vanderpool, but didn't kill him, and on his trial for malicious shooting and wounding, his punishment was fixed at confinement in the penitentiary for one year and one day. The evidence of Vanderpool was that McCarty had three gallons of moonshine whiskey in a pair of saddle pockets which he had hidden in his barn loft. Vanderpool learned the whiskey

was there and took it and the saddle pockets. He and some companions drank most of the whiskey. A few days after that, Vanderpool and Galen Arnett were going up Stinson creek, and met McCarty coming down the creek, going in the direction of Salyersville. Mc-Carty said, "Homer, where is my saddle pockets and whiskey that you stole from me? If you don't give them up I am going to kill you. Unless you bring me my saddle pockets and whiskey or $60.00 I'll shoot your heart out." Vanderpool said, "I threw up my hands and asked him not to kill me, and told him if he would not kill me I would let him keep my horse until I could get the money, and he shot me."

On cross-examination, Vanderpool admitted that he had a pistol but stated that he did not draw his pistol at the time he was shot and wounded. McCarty in his testimony denied having any whiskey, but said a pair of saddle pockets had been stolen from him. He received information that Vanderpool had stolen them, and at the time of the difficulty he was on his way to Salyersville to obtain a warrant of arrest for Vanderpool when he met him, and Vanderpool said to him, "Where in hell are you going?" McCarty told him where he was going and why. Whereupon Vanderpool drew his pistol and remarked, "I'll shoot your heart out." McCarty said he drew his pistol and shot Vanderpool through the arm and disabled him before he had a chance to carry out his threat. Mc-Carty claimed he shot Vanderpool because he in good faith believed it was necessary to do so in order to save his life. McCarty contends now that the court erred in refusing to grant him a continuance of the case on account of the absence of his witnesses. When he made his motion for a continuance, the attorney for the Commonwealth agreed that all the statements of what the absent witnesses would testify might be read to the jury, except the statement as to the evidence of Galen Arnett. McCarty was then, over his objection, put upon trial. In the course of the trial he offered and was allowed to read all these statements except that of Arnett. He is now asking for a new trial on several different grounds, but they really involve but two questions, namely, that the court erred in refusing to grant a continuance and in allowing evidence to be introduced showing the contents of the saddle pockets. McCarty knew Arnett was present when this difficulty occurred, and if he desired to have Arnett's evi-

dence he should have had a subpoena issued for him. McCarty showed no sort of diligence, and can not complain now because the court refused to grant him a continuance, and did not allow him to read the statement of what Arnett would say.

As to the evidence of the contents of the saddle pockets, McCarty's objections are not well taken. "Evidence of other crimes is competent to show identity, guilty knowledge, intent or motive, and the evidence may also be admitted where the offense charged is so interwoven with other offenses that they cannot be separated." Music v. Commonwealth, 186 Ky. 45, 216 S. W. 116; McQueen v. Commonwealth, 196 Ky. 227, 244 S. W. 681; Carsner v. Commonwealth, 196 Ky. 560, 245 S. W. 155.

If he had asked the court to tell the jury the purpose for which this evidence was admitted the court should have given such admonition, but he made no such request.

The judgment is affirmed.